UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THOMAS BLUME, ET AL.,

                              *Plaintiffs*,

             -against-                                 No. 18 Civ. 12251 (CM)

PORT AUTHORITY TRANS-HUDSON
CORPORATION

                              *Defendant*.

---

McMahon, C.J.:

      The court, for its ruling on the parties' motions in limine:

1. *Plaintiffs' Motion in Limine to Preclude Defendant from Obtaining a Setoff and Defendant's Motion in Limine to Obtain a Setoff*

      These two motions are mirror images of one another: PATH asks the court to rule that it is entitled to a setoff of payments it made for Plaintiffs' medical treatments allegedly arising from their injuries related to TBP, while Plaintiffs argue that PATH is not entitled to setoff.

      PATH's motion is granted; Plaintiffs' motion is denied.

      FELA provides that a common carrier like PATH is entitled to "set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought." 45 U.S.C. § 55. This means that PATH can set off any amount that it paid in Plaintiffs' medical expenses used to treat the injuries that precipitated this suit.

      Plaintiffs contend that any payments made to them by PATH are subject to the collateral source doctrine, which provides "that the employer-tortfeasor is not entitled to mitigate damages by setting off compensation received by the employee *from an independent source*." *Blake v. Del. & Hudson R.R. Co.*, 488 F.2d 204, 206 (2d Cir. 1973) (citation omitted) (emphasis added). In *Blake*, the Second Circuit refused to grant a setoff of payments from a general insurance plan that the defendant railroad maintained, because the railroad could not show that the plan was specifically used to offset liability from FELA lawsuits. Any payments that the plaintiff had received from the general insurance plan thus constituted only a "fringe benefit" that was "in effect part of the employee's income for services rendered." *Id.* (citation omitted).

Here, there is no omission of the sort that led to the ruling in *Blake*. The payments to Plaintiffs were made specifically in response to the on-the-job injuries about which they complain in this lawsuit. Indeed, Plaintiffs were unable to obtain such payments until they signed an "Occupational Injury Report" that expressly reserved for PATH "the right to a lien for any such medical expenses against any subsequent judgment or settlement of any action brought against PATH . . . arising out of" the injury. (Dkt. No. 57, Exhs. 4, 5). For this reason, the payments clearly qualify as "sum[s] . . . paid to the injured employee . . . on account of the injury" that precipitated this FELA suit. 45 U.S.C. § 55.

The court will determine the exact amount of any setoff if the jury returns a plaintiffs' verdict. The jury will not be told about any setoff; it will assess damages, after which the court will apply the setoff number.

2. *Defendant's Motion in Limine to Bar the Tank Brite Plus ("TBP") Safety Data Sheet ("SDS")*

PATH moves to preclude the plaintiffs from introducing into evidence a document known as the TBP SDS (Safety Data Sheets). It argues that the SDS is not reliable scientific evidence and that its introduction would be prejudicial.

PATH's motion is denied.

Federal regulations promulgated by the Occupational Safety and Health Administration ("OHSA") require manufacturers of hazardous chemicals like TBP to prepare an SDS. *See* 29 CFR § 1910.1200. Pursuant to these regulations, the SDS identifies possible hazards associated with TBP, as well as the protective measures that are needed to ensure that individuals are not exposed to such hazards. In the case of TPB, these documented hazards include "skin irritation," "eye damage" and aspiration issues if TBP "enters airways." (Dkt. No. 51, Exh. 1, at pg. 1). Those are some of the same symptoms that Plaintiffs allege they suffered as a result of their exposure to TBP. The SDS also advises users of TBP to wear protective equipment, including respirators and goggles, and admonishes that TBP should only be used in areas with adequate ventilation. (*Id*. at pg. 3–4).

Plaintiffs claim that TBP caused their injuries after PATH negligently failed to provide them with respirators or good ventilation while TBP was being used in their presence. As the court understands the record, PATH had a copy of the SDS in its files, which means that, at a minimum, the document is admissible to prove that PATH was on notice of the possibility of harm and the need for precautions and protective gear to prevent that harm. Furthermore, the fact that the SDS is, in effect, a governmentally-required admission by a manufacturer of a substance that the substance it makes is dangerous, and that precautions must be taken when using it, brings it within both Fed. R. Ev. 804(3) (a statement against the maker's interest) and Fed. R. Ev. 807 (the residual exception to the hearsay rule for statements that are contain sufficient guarantees of

trustworthiness). And any possible prejudice to PATH does not substantially outweigh the probativeness of the SDS on the issues of notice and causation. Fed. R. Evid. 403.

If there is any doubt as to the authenticity of the SDS, the witness list will be added to include a representative from TBP's manufacturer (JMN Specialties, Inc), who can be called to testify about its authenticity.

3.  *Motion in Limine to Bar Dr. Fox's Supplemental Affidavit*

PATH moves to preclude the introduction of Dr. Fox's supplemental affidavit. Dr. Fox issued an initial "Toxicologist's Expert Report" on July 31, 2019, in which he detailed his conclusions as to whether TBP caused Plaintiffs' injuries. Then, on October 25, 2019, he provided a supplemental affidavit that was first included in Plaintiffs' motion opposing PATH's motion for summary judgment. In this affidavit he said that he used the Bradford Hill Criteria to form his conclusion that TBP caused Plaintiffs' injuries – a statement about his methodology that he did not make in his initial report.

As made, the motion is granted, because the affidavit is an out-of-court statement by a non-party, which means it is hearsay and so inadmissible. In fact, n*either* the July 31 Expert Report *nor* the October 25 affidavit is admissible. Dr. Fox will be on the witness stand; he will testify to his opinions; his prior statements can be used on cross examination as needed to impeach him or otherwise undermine his testimony.

The motion that PATH should have made, and meant to make, was a motion prefigured in this court's decision denying the motion for summary judgment: a motion to preclude Dr. Fox from testifying about the Bradford Hill criteria and how he arrived as his conclusion about causation, which is the subject of the October 25 affidavit but which is not mentioned in the July 31 expert report. At the Final PreTrial Conference later this week, the court will hear from the parties on this question. As things stand, I have no idea whether Dr. Fox was saying in the October 25 affidavit that the Bradford Hill method was the method he used to arrive at the conclusions in the July 31 expert report, or whether it was a response to something in the Defendant's evidence that could not have been included in the July 31 report. Please make sure counsel are equipped to discuss this issue on September 23.

This constitutes the decision and order of the court. It shall be publicly posted as a written decision. The Clerk is directed to remove the motions at Docket Nos. 48, 50, 53 and 56 from the court's list of open motions.

Dated: New York, New York
         September 21, 2020

_____
Chief Judge

BY ECF TO ALL COUNSEL